Argued December 17, 1973, affirmed January 21, reconsideration denied February 27, petition for review denied March 19, 1974

In the Matter of Baby Boy Birch, a Minor Child

## STATE ex rel MULTNOMAH COUNTY JUVENILE DEPARTMENT, *Respondent, v.* BIRCH (No. 39-579), *Appellant.*

517 P2d 1210

*Richard Lee Barton,* Portland, argued the cause

for appellant. With him on the brief were Sherwood, Barnes, O'Dell & Laman, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

Pursuant to a petition filed by plaintiff and after hearing, the parental rights of the defendant mother in her three-and-one-half-year-old child were terminated by order of the circuit court, domestic relations department, under the authority of ORS 419.523.[1] The court found that defendant is mentally ill, with a diagnosis of schizophrenic reaction, paranoid type, and that the mental illness is chronic. The court thereupon concluded that these were "conditions that are seriously

---

[1] ORS 419.523 provides:

"(1) The parental rights of the parents of a child within the jurisdiction of the juvenile court as provided in subsection (1) of ORS 419.476 may be terminated as provided in this section and ORS 419.525. The rights of one parent may be terminated without affecting the rights of the other parent.

"(2) The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents:

"(a) *Are unfit by reason of conduct or condition seriously detrimental to the child;* or

"(b) Have wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year. In determining whether the parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions." (Emphasis supplied.)

detrimental to the welfare of the child" and terminated the mother's parental rights. She appeals, contending that the judgment is not supported by a preponderance of the evidence and because hearsay and other irrelevant or inadmissible evidence was admitted at the hearing.

The minor male child who is the subject of the termination of parental rights was born November 15, 1969, and a few days after birth was placed in the custody of the Children's Services Division of Multnomah County, Oregon, and has since that time continued in such custody. The child has been in foster care all of his life to date. Prior to this hearing the parental rights of the father had been terminated.

Dr. Donald F. Allison, psychiatrist at Western State Hospital, Fort Steilacoom, Washington, testified that he became acquainted with the mother in January 1969 when she was a patient in Western State Hospital. He testified he was her physician and psychiatrist from 1969 to 1972, that he saw her every day when she was in the hospital and that when she was out of the hospital she would drop in on an indefinite basis every three months or six months. He diagnosed her condition as schizophrenic, chronic paranoid type and gave as his opinion that she would not be able to care for a small child. His predictions for her future were as follows:

> "My prognosis is that if the way it has been going in the past six years, it seems to me deteriorating. Her diagnosis has changed. Her periods of returning to the hospital are increasing. Her concrete ideations are more fixed. Her predictability is becoming less so that I say that she is chronically ill and will remain so."

The mother was a witness on her own behalf. She testified she was first in a mental hospital when she was 13, and "many times" since, but not for longer periods than three months. She said she was 33 at the time of the hearing. Other portions of her testimony seem supportive of the medical testimony that she is schizophrenic, chronic paranoid type. For example, she testified rather incoherently about "a government problem" which interfered with her ability to care for her child but refused to tell how it did interfere. She also told of her house being burned, apparently in 1969, and said that she believed that someone from Olympia, on behalf of the State of Washington, set fire to it.

■ We consider the case to be governed by our holding in *State v. Blum,* 1 Or App 409, 463 P2d 367 (1970). There the mother was mentally ill and as a consequence of her mental illness was found to be unable to provide physical or emotional care for the child and the mother's condition was probably permanent. There we said:

> "It is important that the child have a sense of belonging to a family. This is one of the things we look for after we say that our prime consideration is the best interests of the child. It is not in the best interests of the child to keep him forever in a limbo —a limbo that is terminated, if at all, when on some uncertain date his mentally ill mother recovers and gives him normal mother's care. For this child it may well be that at his present age of seven and one-half years it is already too late to successfully integrate him into a family. If it is not too late, it is important to get it done soon." (Footnote omitted.) 1 Or App at 416.

These same considerations apply in this case. Balancing the interests of the parent and the best interests of the child, we agree with the trial court's conclusion

that the condition of the mother is seriously detrimental to the welfare of the child and that her parental rights should be terminated.

■ Defendant objected to the court's admitting in evidence exhibits involving parental rights to other of her children. Even if we assume, *arguendo,* that this was error, it appears from a reading of the court's statement at the conclusion of the case that it placed no reliance on those exhibits, but rather made its determination based on the condition of the mother and her lack of capacity to care for the child. Their admission, if error, was harmless.

The other objections to the admission of evidence we find to be without merit.

Affirmed.